UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Animal Hospital of Nashua, Inc.</u>,
    Plaintiff

    v.                                 Case No. 11-cv-448-SM
                                         Opinion No. 2012 DNH 087
<u>Antech Diagnostics and
Sound-Eklin</u>,
    Defendants

**O R D E R**

Plaintiff, Animal Hospital of Nashua, Inc. ("AHN"), is suing its suppliers of veterinary diagnostic services and equipment support services, VCA Cenvet, d/b/a Antech Diagnostics ("Antech"), and Sound Technologies, Inc., d/b/a Sound-Eklin ("Sound-Eklin"). AHN seeks to recover economic losses incurred as a result of defendants' failure to provide adequate services and equipment.

Before the court is defendants' motion for judgment on the pleadings with respect to several of plaintiff's claims (document no. 27). For the reasons given, defendants' motion is granted in part and denied in part.

**Legal Standard**

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is treated much like a Rule 12(b)(6)

motion to dismiss." Estate of Bennett v. Wainwright, 548 F.3d 155, 163 (1st Cir. 2008) (citing Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)). When ruling on a motion for judgment on the pleadings under Rule 12(c), the court takes the facts pled in the light most favorable to the plaintiff and "draw[s] all reasonably supported inferences in [its] favor." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 115 (1st Cir. 2009) (citation omitted). "[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level.'" Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) (citation omitted). In other words, a Rule 12(c) motion should be granted "if the complaint fails to state facts sufficient to establish a 'claim to relief that is plausible on its face.'" Id. (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008)).

**Background**

The following facts are drawn from AHN's complaint, and are construed favorably to AHN.

AHN is a veterinary hospital located in Nashua, New Hampshire, and owned by Dr. Leo G. Bishop. Donna Cole is AHN's

chief executive officer.  In 2008, Antech, a provider of veterinary diagnostic and clinical laboratory services, approached Bishop and Cole.  It represented itself as a "leading animal care company" offering "better pricing than [its] competitors with equivalent or superior service and quality."  Antech offered to provide AHN with lab services, an x-ray system, and a loan of $100,000, in exchange for AHN's commitment to use Antech's laboratory services for six years and make an annual payment to Antech of $200,000 during that period.

On August 1, 2008, AHN and Antech entered into a Loan Service Agreement and an Equipment Service Agreement.  Under the agreements, Antech was to provide "all veterinary diagnostic and clinical laboratory Services" to AHN for six years, but AHN was free to "use a laboratory other than a[n] Antech Lab to perform services that a[n] Antech lab cannot perform."  Amended Complaint, pars. 14, 15, document no. 17.  Under the Equipment Services Agreement, Antech provided AHN with an x-ray system and other equipment manufactured by Sound Technologies, Inc. (collectively "STI Equipment"), and it purchased service and warranty coverage to support AHN's use of the equipment (the "Service and Warranty Agreement").  Defendant Sound-Eklin was a

party to the Service and Warranty Agreement.[1] Under that agreement, Sound-Eklin warranted that the STI Equipment would be free from defects for one year, and it further promised to provide, among other things, remote diagnostics, call support, and software downloads and fixes.

Starting sometime in 2009, "numerous" laboratory test results AHN received using the STI Equipment and Antech's laboratory services were "incorrect." AHN told Antech of the errors, but Antech failed to address or respond to AHN's concerns.

In February of 2011, two and one-half years into the contract term, AHN began experiencing significant problems with the STI Equipment. It soon discovered that Antech and Sound-Eklin had discontinued the x-ray system's "imaging receptor" - a piece of hardware that captures images during exposure. It also learned that defendants had discontinued software support for the x-ray system.

---

[1] In 2004, Antech acquired Sound, a provider of medical technology equipment. In 2009, after the parties entered into their agreements, Antech acquired Eklin, a leading seller of digital radiology, ultrasound, and practice management software systems in the veterinary market. Antech merged Eklin and Sound to create Sound-Eklin, the second named defendant in this case.

In August 2011, AHN brought its business to an alternative laboratory services provider.  When Antech threatened litigation, AHN, under protest and subject to a reservation of its rights, repaid Antech the remaining balances on the loan and all open invoices, and it made the STI Equipment available for pick-up by Antech.

AHN then filed suit in this court alleging that it incurred costs in excess of $450,000 as a result of defendants' conduct.  It asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, negligence, negligent misrepresentation, fraud, unjust enrichment, and violation of New Hampshire's Consumer Protection Act.

Defendants move for judgment on the pleadings with regard to the consumer protection and unjust enrichment claims, and as to all tort claims.

**Discussion**

I.  Tort Claims

Defendants seek dismissal of the tort claims primarily on grounds that this dispute arises from the parties' contractual relationship and tort law offers no remedy.  They point out, correctly, that AHN alleges damages solely for economic losses.

Tort claims brought to secure relief only for economic losses are generally barred under the "economic loss doctrine".[2] See2yorgo, Plourde Sand & Gravel Co. v. JGI Eastern, Inc., 154 N.H. 791, 794 (2007); Robinson Helicopter Co. v. Dana Corp., 102 P.3d at 272 (Cal. 2004)). The doctrine is a "judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Plourde, 154 N.H. at 794 (quotation omitted).[3]

But there are exceptions. See generally id. at 794-801. A party may recover solely economic losses in tort, for example, if he shows that the losses resulted from defendant's breach of an independent duty arising "outside the terms of the contract." Id. at 794. See also Robinson Helicopter, 102 P.3d at 273-74.

Here, in its general negligence counts (Counts III and X), AHN alleges that defendants owed it a duty to use their

---

[2] The Agreements contain a California choice-of-law provision. The applicable law in California and New Hampshire is substantially in accord with respect to the issues raised in defendants' motion. Neither party argues otherwise.

[3] The doctrine, under New Hampshire law, also bars tort claims for economic losses where the parties are not in privity, see Plourde, 154 N.H. at 795. Plaintiff's contention that, notwithstanding the doctrine, it is entitled to assert tort claims "in the alternative" to its breach of contract claims, is a non-starter.

professional "skill and diligence . . . in connection with [their] responsibilities to provide . . . services." The "services" identified are the same as those specified in the Agreements: "veterinary diagnostic and clinical laboratory services" and "equipment support and service, remote diagnostics, software downloads, fixes, and enhancements, and other remote solutions." Amended Complaint, Count III, par. 112; Count X, par. 151, document no. 17. In short, AHN posits duties owed by defendants that arise from the terms of the contracts – and not from "outside" the contractual relationship. The general negligence claims, Counts III and X, are, therefore, barred under the economic loss doctrine. See Deutsche Bank Nat'l Trust Co. v. Fadili, 2011 WL 4703707, at *9 (D.N.H. Oct. 4, 2011) (McCafferty, M.J.) (holding negligence claim was barred by the economic loss doctrine where "the factual allegations supporting [the] negligence claim are virtually identical to those supporting [the] breach of contract claim.").[4]

---

[4] The court also rejects AHN's theory that its general negligence claims escape the reach of the economic loss doctrine because, as a laboratory, Antech owed AHN a special duty of care independent of its contractual obligations. AHN has not shown that such a duty exists. The cases it cites are inapposite because all involve the duty of care a laboratory owes to patients who are injured by erroneous lab results, see e.g. Garlick v. Quest Diagnostics, Inc., 2009 WL 5033949, at *10 (D.N.J. Dec. 14, 2009), or the duty of care a veterinarian owes to a pet owner in its medical treatment of the animal. See e.g., de Mercado v. Superior Court, 148 Cal. App. 4th 711, 716 (2007).

As for AHN's negligent misrepresentation claims, those, too, are barred. Negligent misrepresentation claims can avoid dismissal under the economic loss doctrine, see Plourde, 154 N.H. at 799, but only when they allege "independent, affirmative misrepresentations unrelated to the performance of the contract." Wyle v. Lees, 162 N.H. 406, 411-12 (2011). In other words, the alleged misrepresentation must not "'concern the quality or characteristics of the subject matter of the contract or otherwise relate to the offending party's expected performance.'" Id. at 411 (quotation omitted).

Here, AHN identifies as representations of "fact" Antech's statements (1) that it would "provid[e] a functioning X-ray system" and "a laboratory that produced correct results and/or provided proper and reliable service"; (2) "that it would respond in dealing with both the X-ray System and any problems with erroneous laboratory results"; and (3) that it would "provid[e] a level of service" that was "superior or equivalent to its competitors." Amended Complaint, Count IV, par. 116, document no. 17. AHN further alleges that Sound-Eklin represented that it would "provid[e] a functioning X-ray System, and that it would respond in dealing with problems or deficiencies associated with the X-ray System." Id. at Count XI, par. 155.

As an initial matter, Antech's statement about the quality of its service, as pled, constitutes "mere puffery," and cannot support a misrepresentation claim.[5] The remaining statements, although not plainly puffery, fare no better since they relate to "the quality or characteristics of the subject matter of the contract" or to defendants' "expected performance." Wyle, 162 N.H. at 411. That is, AHN's negligent misrepresentation claims, Counts IV and XI, are "based only on breach of . . . contractual dut[ies]," id., and so, are barred by the economic loss doctrine.[6]

AHN's fraud claim (Count VI) also does not survive, but for a different reason. AHN fails to plausibly allege that Antech

---

[5] See Evans v. Taco Bell Corp., 2005 WL 2333841, at *12 and n.19 (D.N.H. Sept. 23, 2005) (Diclerico, J.) ("[G]eneral claims to superiority" are "'puffery'" and "do not amount to actionable representations."); Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990) (finding no false representation of fact in violation of the Lanham Act where defendant's statement that it could provide the same quality of service as competitors at a lower price was a non-actionable "general assertion[...] of superiority rather than [a] factual misrepresentation").

[6] The court necessarily rejects AHN's argument to the effect that its general allegation that each defendant "should have known that its representations were false" suffices as an allegation that defendants had no intention of fulfilling their contractual obligations. See Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153, 158-159 (Cal. App. 6 Dist. 1991) (The "specific intent" required to show that the "promisor did not intend to perform at the time he or she made the promise," "precludes pleading a false promise claim as a negligent misrepresentation.").

had the fraudulent intent required to turn a mere promise into an actionable statement of fact.

In its fraud claim, AHN alleges that Antech intentionally made false statements of fact on which AHN reasonably relied to its detriment. The alleged false "facts" on which AHN is said to have reasonably relied are identified as statements by Antech (1) that it was a "leading animal care company"; (2) that it would offer "better pricing than [its] competitors with equivalent or superior service and quality"; (3) that it would "provide AHN with . . . X-ray equipment worth $95,000 . . . $100,000 in cash, and . . . 'capitation billing'"; and (4) that "it would fulfill and perform all of the terms of the Service Agreements." Amended Complaint, Count VI, pars. 128-131, document no. 17.

Of course, Antech's alleged "puffery" about its superior pricing and leading position in the industry are not actionable. What is left are mere promises. Under both New Hampshire and California law, "'a promise is not a statement of fact.'" See Yorgo Foods, Inc. v. Orics Indus., Inc. 2011 WL 4549392, *12 (D.N.H. Sept. 29, 2011) (quoting Hydraform Prods. Corp. v. Am. Steel & Aluminum Corp., 127 N.H. 187, 200 (1985)); Tarmann, 2 Cal. App. 4th at 158. Nevertheless, AHN's fraud claim could avoid dismissal by plausibly alleging that Antech "'at the time

it [made its promises], . . . had no intention to fulfill'" them. Yorgo Foods, 2011 WL 4549392, at *12, quoting Thompson v. H.W.G. Group, 139 N.H. 698, 701 (1995) ("[A] promise can imply a statement of material fact about the promisor's intention and capacity to honor the promise.") (quotation omitted); Tarmann, 2 Cal. App. 4th at 158-159 & n.2 (promises made with "actual contemporaneous intent not to perform" are misrepresentations of fact actionable as "actual fraud").

Here, the amended complaint alleges, at least generally, that Antech had such fraudulent intent at the time it promised to provide money, equipment, services, and support to AHN. Specifically, it alleges "on information and belief" that Antech made those promises "with knowledge of their falsity." Amended Complaint, document no. 17, Count VI, par. 132. Accepting that allegation as an assertion - albeit a general one - that Antech did not intend to fulfill its promises when they were made, still it falls short.

Although, in a claim for fraud, a defendant's knowledge or state of mind may be "alleged generally," Fed. R. Civ. P. 9(b), the general allegation of fraudulent intent here is directly contradicted by specific factual allegations in the complaint. See Carrol v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002)

(complaint failed to state claim for fraud and misrepresentation where general allegation that plaintiff reasonably relied on misrepresentations was contradicted by specific factual allegations); see also Libby v. Merril, 2003 WL 21756830, at *4 (D. Me. July 29, 2003) ("bald assertion" that defendant acted pursuant to "policy or regulation" not accepted as true where it was "undermined" by other allegations).

With regard to Antech's promise to provide equipment, the amended complaint states that "[o]n or after" the parties executed the Equipment Service Agreement, "Antech provided AHN with the STI Equipment." Amended Complaint, par. 31, document no. 17. The complaint further alleges that "AHN received" money from Antech in the form of a $125,000 loan. Id. at par. 60. With regard to Antech's promise to provide laboratory services, the amended complaint asserts that Antech provided such services, but alleges that, starting sometime in 2009, "numerous laboratory test results" were "incorrect." Id. at par. 50. With regard to Antech's promise to provide continuing support for the equipment and software, the amended complaint alleges that Antech's defaults did not begin until February 2011, two and one-half years into the six-year contractual period. Id. at par. 34.

The picture painted by the specific allegations is one of Antech undertaking to perform its contractual obligations, but failing, as the performance period progressed, to fulfill its obligations, to AHN's economic detriment.  Absent more specific and pertinent factual allegations, the amended complaint does not adequately allege that Antech had no intention of keeping its contractual promises at the time they were first made.

AHN's conclusory allegation of fraudulent intent is also not saved by its specific allegation that Antech's conduct was part of a "corporate pattern and practice" of wrongful conduct – as evidenced by similar lawsuits filed in 2011 involving Antech and other animal hospitals.  See Amended Complaint, Count VI, par. 132, document no. 17.  An adequate inference of fraudulent intent does not arise from the fact that defendants failed to fulfill virtually identical contractual obligations owed to other similarly-situated customers.

II.  CPA Claim

AHN alleges in Counts V and XII that defendants committed unfair and deceptive trade practices in violation of N.H. Rev. Stat. Ann. ("RSA") 358–A.  It says defendants' deceptive practices included "providing an X-ray System that became obsolete"; "providing a laboratory that frequently produced

erroneous results and/or provided poor service"; "non-responsiveness" to problems relating to the "obsolete X-ray System" and to "the erroneous lab results." Amended Complaint, Count V, par. 122; Count XII, par. 161.

New Hampshire's Consumer Protection Act makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358–A:2. Unfair or deceptive acts include "[r]epresenting that goods or services have . . . uses, benefits, or quantities that they do not have," and "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another." RSA 358-A:2, V, VII. The Act also reaches any other unfair or deceptive practice that "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Barrows v. Boles, 141 N.H. 382, 390, 687 A.2d 979 (1996) (quotation omitted). See also Tagliente v. Himmer, 949 F.2d 1, 7 (1st Cir. 1991) (applying "rascality" test).

Defendants argue that AHN has not alleged that they engaged in any conduct specified in the Act or rising to the requisite level of "rascality." AHN responds that it has plausibly alleged

14

that defendants falsely represented that their goods and services had "uses, benefits, or quantities" which they did not have, or that the goods and services met "a particular standard, quality, or grade" which they did not meet.  AHN further contends that defendants engaged in "unfair, unethical, and oppressive conduct."

   To state a claim under the Act for misrepresentations relating to the quality of a good or service, a plaintiff must allege that defendant misrepresented a "<u>particular</u> standard or [level of] quality."  <u>Private Jet Serv. Group, Inc. v. Sky King, Inc.</u>, 2006 WL 2864057, at *5 (D.N.H. Oct. 4, 2206) (DiClerico, J.) (defendant's promises to "keep its aircraft operative and airworthy" and to provide "high quality" services and equipment were "too vague" to support a claim for misrepresentation under RSA 358-A:2, VII) (emphasis added).  Here, AHN has not alleged that defendants made anything more than vague or general puffery-type representations with respect to the quality of their goods and services.

   AHN has also not alleged any conduct that meets the "rascality" standard.  Both parties are business entities who negotiated an arms-length contractual relationship.  Although the Act does apply to business-to-business transactions, <u>see</u> <u>Mountain

Platform Tennis, Inc. V. Sherwinn-Williams Co., 40 F.3d 492, 497 (1st Cir. 1994), it is "especially difficult" to show rascality in such circumstances. Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 200 (1st Cir. 1995) (applying rascality standard under the Massachusetts consumer protection law). See also Wentworth-Douglass Hosp. v. Young & Novis, 2012 WL 1081172, at *4 (D.N.H. March 30, 2012) ("[W]hat is 'rascality' in a transaction between a seller and an ultimate consumer may be nothing more than 'rough and tumble' where two businesses are involved."). In the "rough and tumble" business world, disputes over broken promises ordinarily will not rise to a level sufficient to support a claim under the Act. See Yorgo Foods, 2011 WL 4549392, at *13.

That is so here, at least as the facts have been pled. As discussed, the alleged wrongful conduct relates entirely to defendants' failures to fulfill their contractual obligations. No additional facts are alleged that might suggest a degree of rascality. The fact that defendants are involved in other, similar litigation, may suggest a general inability or unwillingness to perform their contractual obligations, but does not suggest why, and, of course, plaintiff has presumably pled all facts it deemed relevant to this case in its amended complaint.

Accordingly, defendants' motion for judgment on the pleadings as to AHN's claims under New Hampshire's Consumer Protection Act, Counts V and XII, is granted.

III. <u>Unjust Enrichment</u>

Defendants' correctly urge dismissal of AHN's claims for unjust enrichment, Counts VII and XIII, on grounds that recovery under that equitable theory is not available when the parties' relationship is governed by a valid contract.  <u>See</u> <u>Yorgo Foods</u>, 2011 WL 4549392 at *12 ("A cause of action for unjust enrichment does not lie when a valid unrescinded contract governs the rights of the parties.").  But AHN is equally correct in arguing that it may pursue a claim for unjust enrichment, as an alternative theory of liability, in case the court ultimately finds that no enforceable contract existed between the parties - an issue potentially raised by defendants' denial of AHN's contractual allegations.  <u>See</u> Answer to Amended Complaint, document no. 25, pars. 14-22 (denying language quoted verbatim from the Agreements).

Defendants' motion for judgment on the pleadings as to Counts VII and XIII is, therefore, denied.

## Conclusion

For these reasons, defendants' motion for judgment on the pleadings (document no. 27) is granted with regard to Counts III, IV, V, VI, X, XI, and XII, and denied with regard to Counts VII and XIII.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 17, 2012

cc: Julie B. Brennan, Esq.
    Adam J. Chandler, Esq.
    Robert M. Fojo, Esq.
    Brian H. Lamkin, Esq.