**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Animal Hospital of Nashua,
Inc.

    v.                                              Civil No. 11-cv-448-LM
                                                    Opinion No. 2014 DNH 025
Antech Diagnostics and
Sound-Eklin

_____

VCA Cenvet, Inc. d/b/a Antech
Diagnostics

    v.

Animal Hospital of Nashua, Inc.;
AHN Pet Hospitals, Inc.; AHN
Animal Hospital Services, Inc.;
and Dr. Leo Bishop, individually
and d/b/a The Animal Hospital of
Nashua


**O R D E R**

    This case arises from a now-defunct business relationship involving Animal Hospital of Nashua, Inc. ("AHN") and a supplier of laboratory services and medical equipment, VCA Cenvet, Inc. ("Antech"). The dispute concerns AHN's dissatisfaction with the quality of certain services and equipment provided to it by Antech, and Antech's unhappiness over the termination of the business relationship. Of the various claims and counterclaims in this case, five are relevant to the issues decided in this

order: AHN's claims for breach of contract and breach of the covenant of good faith and fair dealing against Antech (Counts I and II of AHN's complaint); and Antech's counterclaims against Dr. Leo Bishop, for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment (Count I, II, and III of Antech's counterclaim). There are currently six motions pending before the court, but in this order, the court addresses only three of them: (1) Dr. Bishop's motion for summary judgment on all three of Antech's counterclaims, which is based, in part, on his assertion that he had no contractual relationship with Antech; (2) Antech's motion for summary judgment that it did have a contractual relationship with Dr. Bishop; and (3) Antech's motion to strike an affidavit by Dr. Bishop that he submitted in support of his motion for summary judgment. For the reasons that follow, Dr. Bishop's summary-judgment motion is granted in part and denied in part; Antech's summary-judgment motion is denied; and (3) Antech's motion to strike is denied as moot.

### Summary Judgment Standard

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGair v. Am. Bankers Ins. Co.

of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).

## Background

AHN is an animal hospital. Dr. Leo Bishop is ANH's owner and president. Antech is a nationwide provider of diagnostic laboratory services for animal hospitals. In 2008, Antech provided AHN with a digital x-ray machine, and for three years, Antech provided various laboratory services to AHN. Two of AHN's claims against Antech (Counts I and II) and two of Antech's counterclaims against AHN (Counts I and II) are based upon the presumption – alleged in the parties' respective pleadings – that the business relationship between them was governed by a pair of contracts.

The record includes two documents, each dated August 1, 2008, and each titled "Services Agreement." Both documents include the following preamble:

> This Services Agreement (this "**Agreement**") is entered into by and between Antech Diagnostics ("**Antech**") and the party or parties listed below as "**Animal Hospital Owner(s).**"

Countercl. Def.'s Mem. of Law, Ex. B (doc. no. 76-3), at 1, Ex. C (doc. no. 76-4), at 1 (boldface in the original). In a section titled "Summary Terms," each "Agreement" identifies, in the following way, the party or parties with which Antech was purportedly contracting:

> **Animal Hospital(s):** The Animal Hospital of Nashua
> **Owner(s):** Dr. Leo Bishop

Id. (boldface in the original). The last page of each "Agreement" contains two signature blocks, the top one labeled: "**ANIMAL HOSPITAL OWNER(S).**" Id., Ex. B, at 4, Ex. C, at 3 (boldface in the original). That signature block, in turn, provides spaces for two signatures. Each of those spaces is set up in the following way:

> _____
> Print Name:_____
> Its:_____

Id. In each agreement, the first line of the first ANIMAL HOSPITAL OWNER(S) signature space contains the signature of Dr. Bishop, followed by the printed notation "For AHN Pet Hospitals Inc." Id. In the second line, Dr. Bishop printed his name, and in the third line, he entered "President." Id. The second

space in the ANIMAL HOSPITAL OWNER(S) signature block, i.e., the space for a second signature, is scratched out. That suggests that the contract, if any, memorialized in the "Agreements" was between Antech and only one other party. In the body of each "Agreement," that is, below the preamble and above the signature blocks, there is language that appears to impose obligations on both "Animal Hospital Owner" and "Animal Hospital" and there is language tending to suggest that the "Agreement" could be breached by either "Animal Hospital Owner" or by "Animal Hospital."

Each "Agreement" indicates an effective date of August 1, 2008, and a term of six years. In each "Agreement," the principal obligations owed to Antech were for AHN and/or Dr. Bishop to pay for $200,000 worth of Antech's laboratory services per year, and for Antech to be the exclusive provider of such services to AHN and/or Dr. Bishop. Beyond that, one of the two "Agreements" contains terms related to a loan made by Antech as an incentive to AHN and/or Dr. Bishop to make Antech its exclusive provider of laboratory services. Specifically, that agreement provided that "Antech [would] loan to <u>Animal Hospital Owner</u> an amount equal to $125,000." Countercl. Def.'s Mem. of Law, Ex. B (doc. no. 76-3), at 1 (emphasis added). It is undisputed that in August of 2008, Antech provided Dr. Bishop

with a check, made out to him, and that Dr. Bishop deposited that check into a bank account.  The other "Agreement" contains terms related to the x-ray machine that Antech provided to AHN and/or Dr. Bishop, also as an incentive.  In August of 2011, three years into the six-year term of the purported agreement, AHN and/or Dr. Bishop stopped using Antech's services and began to have AHN's laboratory work performed by another provider.

Based upon the foregoing, AHN sued Antech[1] for breach of contract, breach of the covenant of good faith and fair dealing and unjust enrichment, alleging that: (1) the x-ray machine it received from Antech became obsolete; (2) Antech's laboratory results were frequently erroneous; (3) Antech provided poor customer service; and (4) Antech was non-responsive to AHN's concerns over the allegedly erroneous laboratory results and the obsolesce of the x-ray machine.  Antech has counterclaimed against Dr. Bishop,[2] asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, all arising out of the decision by AHN and/or

---

[1] AHN has also sued the manufacturer of the x-ray machine, Sound-Elkin, but AHN's claims against Sound-Eklin do not figure into any of the three motions upon which the court rules in this order.

[2] Antech has also counterclaimed against ANH and two related corporate entities, but those claims do not figure into any of the three motions upon which the court rules in this order.

Dr. Bishop to stop using Antech's laboratory services and to procure such services from a different provider.

## Discussion

This order addresses document nos. 76, 80, and 88. In document no. 76, Dr. Bishop moves for summary judgment on all three counts of Antech's counterclaim, arguing that: (1) Counts I and II fail because he was not a party to the "Agreements" on which Antech bases its claims for breach of contract and breach of the covenant of good faith and fair dealing; and (2) Count III, a claim for unjust enrichment, fails because he received no personal benefit from Antech. Antech objects, categorically and, in document no. 80, it moves for summary judgment on its assertion that Dr. Bishop was a party to the "Agreements." Finally, in document no. 88, Antech moves to strike an affidavit by Dr. Bishop that "addresses a single topic – the identity of the bank account into which Dr. Bishop supposedly deposited Antech's $125,000 loan check." Countercl. Pl.'s Mot. to Strike (doc. no. 88) 2. The court begins with the two motions for summary judgment and then turns to Antech's motion to strike.

A. Document Nos. 76 and 80

1. Counts I and II of Antech's Counterclaim

The parties' most contentious dispute concerns whether Dr. Bishop was a party to the "Agreements" in this case.  Resolution of that dispute has obvious implications for Dr. Bishop's motion for summary judgment on Counts I and II of Antech's counterclaim, as he could hardly be liable for breaching a contract to which he was not a party.

In both AHN's complaint and Antech's counterclaim (and in the arguments advanced by Dr. Bishop and Antech on the question of whether Dr. Bishop was a party to the "Agreements") the parties proceed as if there was an agreement between Antech and one or more other parties.  As a consequence, Dr. Bishop and Antech devote no attention to the validity or enforceability of the two "Agreements" described above.  The court, however, cannot so lightly presume that there is an enforceable contract in this case.  Cf. Antech Diagnostics, Inc. v. Downers Grove Animal Hosp. & Bird Clinic, P.C., Civ. No. 12 C 2736, 2012 WL 2567045, at *1 (N.D. Ill. June 29, 2012) ("if an allegation in the complaint conflicts with the written agreement, the agreement usually controls") (citing Massey v. Merrill Lynch & Co., 464 F.3d 642, 645 (7th Cir. 2006)); see also 3 James Wm.

Moore, Moore's Federal Practice § 10.05[5], at 10-35 (3d ed. 2013).

Each of the two "Agreements" includes a provision directing that it "shall be . . . construed . . . in accordance with the laws of the State of California." Countercl. Def.'s Mem. of Law, Ex. B (doc. no. 76-3), at 3, Ex. C (doc. no. 76-4), at 3. With regard to contract interpretation, California law provides:

> "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. ([Cal.] Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (Id., § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (id., § 1644), controls judicial interpretation. (Id., § 1638.)

In re Marriage of Lewis, F061164, 2012 WL 489682, at *2 (Cal. Ct. App. Feb. 15, 2012) (emphasis added). That is, "[t]he fundamental goal of contract interpretation is to give effect to the parties' mutual intent." Id. at *3 (citing Morey v. Vannucci, 75 Cal. Rptr. 2d 573, 578 (Cal. Dist. Ct. App. 1998)) (emphasis added).

In the usual contract-interpretation case, there is a contract, the parties in court are parties to the contract, and their dispute concerns the scope of the rights granted and/or the obligations imposed by the contract, as expressed by its

9

terms. Here, the situation different; Dr. Bishop's motion for summary judgment rests upon an argument that he has been sued for breaching a contract to which he was not a party. But, because language in a contract that identifies the parties to it must surely be considered a provision of that contract, the court applies the principles of contract interpretation described above to determine whether Dr. Bishop was a party to either of the two "Agreements" in this case.

Neither of the "Agreements" in this case may be reasonably construed as expressing an intention, shared by Antech and Dr. Bishop, for Dr. Bishop to be contractually bound to Antech. The court prefaces the following discussion by noting that: (1) California law encourages courts to rely upon written contractual provisions, if possible, when attempting to discern the mutual intentions of contracting parties, see Marriage of Lewis, 2012 WL 489682, at *2; and (2) both Dr. Bishop and Antech insist that the "Agreements" in this case are unambiguous. While each party contends that the "Agreements" are unambiguous and supports his or its position, what those two writings demonstrate most clearly is that there was no meeting of the minds between Antech and Dr. Bishop as to whether Dr. Bishop was a party to them.

The preamble to each "Agreement" demonstrates Antech's intention to form a contract with one or more animal hospital owners,[3] and the section describing the parties to the "Agreement" designates Dr. Bishop as the owner of AHN. The heading to the top signature block further demonstrates Antech's intention to contract with Dr. Bishop, by asking for the signature(s) of one or more animal hospital owners.

However, the manner in which Dr. Bishop completed the ANIMAL HOSPITAL OWNER(S) signature block in each of the two "Agreements" demonstrates that he did not share Antech's intention that he be a party to a contract with Antech. Dr. Bishop did not cross out the designation of the entity or entities completing the first signature blocks as "**ANIMAL HOSPITAL OWNER(S),**" but he clearly expressed his intention <u>not</u> to sign the "Agreements" as an animal hospital owner by describing his signature as "For AHN Pet Hospitals Inc.," as its

---

[3] While Antech objects to Dr. Bishop's invocation of the rule that ambiguous contract terms should be construed against the drafter, on grounds that the terms of the "Agreements" in this case were negotiated by the parties, <u>see</u> Countercl. Pl.'s Mem. of Law (doc. no. 79-1) 15-16, the idea that Antech was the initial drafter of these "Agreements," and that their printed portions reflect Antech's intentions, is strongly supported by the fact that Antech has sued at least three other animal hospitals for breaching similarly worded contracts. <u>See</u> <u>Antech Diagnostics, Inc. v. Morwalk, Inc.</u>, Civ. No. DKC 13-0068, 2013 WL 3353772, at *1-3 (D. Md. July 2, 2013); <u>Downers Grove</u>, 2012 WL 2567045, at *3-4; <u>VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC</u>, Civ. No. JKB-11-1763, 2011 WL 6257190, at *3 (D. Md. Nov. 29, 2011).

president.  Thus, while Antech intended to form a contract with Dr. Bishop, Dr. Bishop intended something else, presumably, for Antech to form a contract with AHN Pet Hospitals Inc. Accordingly, in the written "Agreements," the court can discern no mutual intention for Dr. Bishop to be a party to them.

Because the written "Agreements" express no mutual intention for Dr. Bishop to be a party to them, Antech's motion for summary judgment in its favor on that issue is denied.  For the same reason, Dr. Bishop is entitled to judgment as a matter of law on Counts I and II of Antech's counterclaim against him. If there was no mutual intention for Dr. Bishop and Antech to enter into a contract with each other, there was no contract, enforceable against him, for him to breach.  See Scott v. Pac. Gas & Elec. Co., 904 P.2d 834, 841 (Cal. 1995) ("it is requisite to [the] enforceability [of a contract] that it must evidence a meeting of the minds upon the essential features of the agreement") (citations omitted).

Dr. Bishop, however, is only one of the four parties named as defendants in Counts I and II of Antech's counterclaim; Antech has also asserted claims for breach of contract and breach of the covenant of good faith and fair dealing against AHN.  And, AHN has asserted similar claims against Antech.  For the same reasons that the "Agreements" do not demonstrate a

meeting of the minds regarding Dr. Bishop's status as a party to them, the court can easily envision an argument that those "Agreements" do not demonstrate a meeting of the minds regarding AHN's status as a party, either.  Both Dr. Bishop and Antech insist that the two "Agreements" are unambiguous, but as the court reads them, the thing they express most unambiguously is confusion over who the parties are.  That is, the written Agreements could be quite reasonably construed as a transcript of two (or three) parties talking past one another, rather than a memorialization of a meeting of the minds.  Given that under California law, a contract is enforceable only if it "evidence[s] a meeting of the minds upon the essential features of the agreement," Scott, 904 P.2d at 841, and that identification of the parties to a contract is one of its essential features, the court harbors grave concerns over whether there is an enforceable contract in this case at all. The lack of a contract would: (1) entitle the three remaining counterclaim defendants to dismissal of Counts I and II of Antech's counterclaim; (2) entitle Antech to dismissal of Counts I and II of AHN's complaint; and (3) leave unjust enrichment as the only cause of action asserted by AHN against Antech and as the only cause of action asserted by Antech against the counterclaim defendants.

In light of the substantial consequences of a determination that there is no enforceable contract in this case, and the fact that the court has not heard from either Antech or AHN on the question of whether an enforceable agreement between them was ever formed, AHN and Antech are ordered, within fifteen days of the date of this order, to show cause why the court should not rule that there is no enforceable contract in this case. As the parties brief this issue, they should bear in mind that the question before them is one of contract interpretation. Cf. Downers Grove, 2012 WL 2567045, at *1.

### 3. Count III of Antech's Counterclaim

Dr. Bishop also moves for summary judgment on Count III of Antech's counterclaim, which is based upon the equitable theory of unjust enrichment. Specifically, Antech asserts that the "Counterclaim-Defendants have been unjustly enriched because they have received the benefits of a $125,000 loan, over $138,000 in digital radiography equipment, and valuable discounts from Antech for their laboratory service needs." Def.'s Answer (doc. no. 12) 18. Dr. Bishop contends that he was not enriched because he received no laboratory services from Antech and deposited the check he received from Antech into ANH's bank account, not his own personal account. In other

words, he argues that he cannot have been unjustly enriched because he, personally, received no benefit from Antech.

The court notes, at the outset, an interesting legal issue that will need to be addressed eventually, but not quite yet. That issue concerns the law under which the court will ultimately resolve the claims and counterclaims for unjust enrichment. Both "Agreements" include the following choice-of-law provision: "This Agreement shall be governed by and construed both as to validity and performance and enforced in accordance with the laws of the State of California without giving effect to the choice of law principles thereof." Countercl. Def.'s Mem. of Law, Ex. B (doc. no. 76-3), at 3, Ex. C (doc. no. 76-4), at 3. But since claims for unjust enrichment only arise in the absence of an enforceable contract, it is not at all clear that a choice-of-law provision in a written document that is not an enforceable contract has any bearing on the law to be applied to the unjust enrichment claim that arises from that document's unenforceability. Thus, it seems possible that the unjust enrichment claims in this case should be decided under New Hampshire law. In any event, the parties will need to address this issue in the future, but there is no need to address it now, given the nature of Dr. Bishop's defense against Antech's unjust enrichment claim against him.

He says he received no benefit from Antech, but the undisputed facts are to the contrary. The "Agreement" pertaining to the loan, which bears Dr. Bishop's signature, demonstrates the signatories' intention for Antech to make a loan to Dr. Bishop, not AHN. There is no language anywhere else in the "Agreement" that could be construed as expressing an intention for anyone other than Dr. Bishop to be the recipient of the loan from Antech. Moreover, Dr. Bishop has testified that the check for the loan proceeds was made out to him alone, not to AHN or any other corporate entity. See Countercl. Pl.'s Obj. to Summ. J., Ex. C (doc. no. 79-4), at 20. Dr. Bishop devotes all of his attention to what he did with the check from Antech after he received it, but offers no authority for the proposition that what he did with the check has any bearing on whether he, as opposed to some other entity, received a benefit from Antech in the first instance. Accordingly, Dr. Bishop's motion for summary judgment, as to Count III of Antech's counterclaim, is denied.

B. Document No. 88

Document no. 88 is Antech's motion to strike the affidavit in which Dr. Bishop says that he deposited the check he received from Antech into AHN's operating account and that the proceeds from the loan were used for business purposes. Given the

court's disposition of Dr. Bishop's motion for summary judgment on Count III of Antech's counterclaim, Antech's motion to strike is denied as moot.

## Conclusion

For the reasons detailed above, Dr. Bishop's motion for summary judgment (doc. no. 76) is granted as to Counts I and II of Antech's counterclaim, but denied as to Count III, and Antech's motion for summary judgment (doc. no. 80) is denied. Thus, as to Dr. Bishop, the only counterclaim that remains is Count III, Antech's claim for unjust enrichment. Antech's motion to strike (doc. no. 88) is denied as moot. Finally, as explained above, AHN and Antech are ordered to show cause why the court should not rule that there is no enforceable contract between them in this case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 10, 2014

cc: Phillip A. Baker, Esq.
    Julie B. Brennan, Esq.
    Adam J. Chandler, Esq.
    Robert M. Folo, Esq.
    Brian H. Lamkin, Esq.
    Christopher T. Vrountas, Esq.